

## NUMBER 13-11-00388-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

## IN THE INTEREST OF J.J.D. AND A.M.C., CHILDREN

---

### On appeal from the 36th District Court
### of Bee County, Texas.

---

## MEMORANDUM OPINION
### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Benavides

This appeal involves the involuntary termination of the parent-child relationships

between a mother and her two children, and a father and his child.   *See* TEX. FAM. CODE

ANN. § 161.001 (West 2008).   Appellants[1] (hereinafter "Mother" and "Father") appeal a

---

[1] In order to protect the minor children's identities, we will use aliases to identify the parties and the children involved in this appeal.   *See* TEX. R. APP. P. 9.8.

jury verdict which (1) terminated Mother's parent-child relationship with Child One and Child Two; and (2) terminated Father's parent-child relationship with Child Two. By five issues, which we consolidate into one,[2] Mother challenges the factual and legal sufficiency of the evidence to sustain the jury's verdict. By four issues, which we consolidate into one,[3] Father challenges the factual and legal sufficiency of the evidence to sustain the jury's verdict. We affirm the trial court's judgment because the evidence is factually and legally sufficient to support a termination finding against both Mother and Father.

## I. BACKGROUND[4]

On January 7, 2010, an investigator with the Texas Department of Family and Protective Services (DFPS) received a tip concerning appellants' alleged drug use, as well as the condition of a home where Child One and Child Two resided. In her initial visit at the home, the DFPS investigator did not uncover anything that appeared to be a danger to the children. Nevertheless, DFPS requested hair-follicle testing of both Mother and Father to determine whether they were actively using drugs or had used in the recent past. The tests yielded positive results for cocaine-use for both parents.

---

[2] *See* TEX. R. APP. P. 47.1.

[3] *See id.*

[4] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See id.* 47.4.

DFPS then placed the children into foster homes, and they ultimately settled into the Foster Mother's home.[5]

An adversarial hearing was held on February 2, 2010. At the hearing, the trial court ordered that DFPS become the children's temporary managing conservator and ordered that Mother and Father retain temporary possession of the children. The trial court further ordered that Mother and Father comply with the DFPS Service Plan for the children during the pendency of the suit. *See* TEX. FAM. CODE ANN. §§ 263.101–.102 (West 2008). One task articulated in the family service plan stated that Mother and Father "shall submit to a drug assessment and random drug screening at the discretion" of DFPS. Mother and Father were allowed to visit with the children during this period of time. In the months following the temporary orders, Mother was offered seven drug tests: three returned positive for cocaine, two returned negative, and two were not taken; and Father was offered nine drug tests: three returned positive for cocaine; four were negative; and two were not taken. Following Mother and Father's positive drug tests in March 2011, DFPS initiated termination proceedings.

The termination cases were consolidated and tried before a Bee County jury. After the two-day trial, the jury made affirmative findings to support termination of Mother's parental rights of Child One and Child Two and affirmative findings to support termination of Father's parental rights of Child Two. The trial court then ordered that

---

[5] Child One and Child Two's foster parents are intervenors in the underlying case.

3

DFPS be appointed as permanent managing conservator of the children. Mother and Father filed separate appeals.

## II. APPLICABLE LAW AND STANDARD OF REVIEW

A court may order the termination of a parent-child relationship if shown by clear and convincing evidence that a parent's conduct has met at least one of the statutory factors listed in the family code, coupled with an additional finding by clear and convincing evidence that termination is in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002) (noting the two-prong test in deciding parental termination, and that one act or omission of conduct satisfies the first-prong); *In re E.M.N.*, 221 S.W.3d 815, 820–21 (Tex. App.—Fort Worth 2007, no pet.).

We review challenges to the factual sufficiency of the evidence in a termination proceeding by giving "due deference to a jury's factfindings," and we do not "supplant the jury's judgment" with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). In our review, we should "inquire 'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [ ] allegations'" from the entire record. *Id.* (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). Furthermore, when conducting a legal sufficiency analysis in a parental termination case:

> [A] court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most

4

favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. This does not mean that a court must disregard *all* evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

*In re J.F.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (quoting *In re J.F.C.*, 96 S.W.3d at 266)).

## III.    DISCUSSION

### A.    Mother's Sufficiency Challenge

In Mother's sole issue on appeal, she contends that the evidence presented at trial was factually and legally insufficient to support a finding of termination.

Mother first argues that the testimony of DFPS witnesses should be given little weight because DFPS undermined the credibility of its witnesses by intentionally placing the children with foster parents whose stated goal was adoption in contrast to the averred goal of reunification with Mother as stated in the family service plan. We disagree. Witness credibility issues '"that depend on appearance and demeanor cannot be weighed by the appellate court'" because the witnesses are not present; "[a]nd even when credibility issues are reflected in the written transcript, the appellate court must defer to the jury's determinations, at least so long as those determinations are not themselves unreasonable." *In re J.P.B.*, 180 S.W.3d at 573. We decline to adopt Mother's argument because to do so would require us to weigh evidence and resolve issues of credibility which would then invade the province of the jury. *See Sw. Bell Tel.*

5

*Co. v. Garza*, 164 S.W. 607, 625 (Tex. 2004). We must assume that the jury resolved purported evidentiary conflicts like this one in favor of its verdict, so long as it is reasonable. *Id.* Here, it was reasonable for a jury to weigh the purported evidentiary conflict and credibility issues in favor of termination and against Mother.

Next, she argues that DFPS failed to establish by clear and convincing evidence that she violated any of the first-prong statutory grounds of conduct required for termination. The jury made affirmative findings that she:

(1)     knowingly placed or allowed the children to remain in conditions or surroundings which endangered the children's physical or emotional well-being, TEX. FAM. CODE ANN. § 161.001(1)(D);

(2)     engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children, *id.* § 161.001(1)(E);

(3)     failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of her children who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal under Chapter 262 for the abuse or neglect, *id.* § 161.001(1)(O); and

(4)     termination was in the children's best interest.

The law allows DFPS to meet the first-prong of child termination proceedings if an affirmative finding is made on at least one statutory act or omission specified in section 161.001(1) of the family code. *See In re J.F.C.*, 96 S.W.3d at 261; *In re D.S.P.*, 210 S.W.3d 776, 779 (Tex. App.—Corpus Christi 2006, no pet.). We will first examine whether the evidence in this case is legally and factually sufficient to support an affirmative finding under section 161.001(1)(O).

6

Here, the trial court ordered a "service plan" for Mother, which included among other things: (1) submitting to drug assessment and random drug screenings at DFPS's discretion; and (2) attending individual substance abuse therapy paid for by DFPS. Mother argues that she was not given clear instructions to follow, and as a result of DFPS's actions, inactions, misdirection, and malfeasance with regard to implementation of the service plan, she was unable to comply with the plan. The record reveals that on at least five occasions, Mother was non-compliant with her drug testing requirements pursuant to the February 2010 service plan.[6] DFPS caseworker Sara Bridge testified that the number one priority in the service plan was that the Mother remain drug free. In addition to the testing, Bridge testified that DFPS submitted paperwork for Mother to attend substance abuse counseling and substance abuse assessment at a facility in Edinburg, Texas, since she and Father had moved to the area. Testimony was elicited that Mother did not attend assessment or treatment at the facility despite DFPS's efforts to get her involved. The jury also heard evidence that Mother completed a mandatory parenting class in January 2011.

Finally, Bridge testified that typical termination cases must end by statute in one year. *See* TEX. FAM. CODE ANN. § 263.401 (West 2008). However, Bridge testified that this case was extended, *see id.* § 263.401(b), because Mother's and Father's progress was not significant enough to approach reunification with their children, and DFPS therefore gave them extra time to comply with the service plan. Despite the extra time,

---

[6] According to DFPS caseworker Sara Bridge, Mother tested positive for cocaine on March 11, 2010, August 27, 2010, and March 21, 2011. On two other occasions—January 31, 2011 and March 16, 2011—DFPS requested drug testing, but Mother did not comply with the request. Mother tested negative on December 10, 2010 and January 31, 2011.

7

Mother did not comply with the court-ordered service plan.

The record shows that Mother continued to use cocaine during the court-ordered service plan and failed to comply with the tasks specified in the plan. Accordingly, based on our review of the record and giving appropriate deference to the jury's factfindings, we conclude that the evidence is legally and factually sufficient to support a reasonable trier of fact's firm belief or conviction that Mother failed to comply with her court-ordered service plan. *See* TEX. FAM. CODE ANN. § 161.001(1)(O); *see also In re H.R.M.*, 209 S.W.3d at 108; *In re J.F.B.*, 180 S.W.3d at 573.[7]

Having concluded that sufficient evidence satisfied the first-prong of a termination proceeding, we now turn to whether the jury's finding that termination of Mother's parental rights was in the children's best interest and was supported by sufficient evidence. *See* TEX. FAM. CODE ANN. § 161.001(2). Mother argues that she is better equipped to care for the children and is "ready to comply" with whatever it takes to reunite with her children. She also contends that DFPS desires are to place Child One and Child Two with an economically advantaged family over Mother and Father's lower-economic household. We disagree.

In *Holley v. Adams*, the supreme court provided a non-exhaustive list of factors that courts consider in analyzing the best interests of a child, which include:

---

[7] Because we conclude that sufficient evidence supports the jury's finding that Mother failed to comply with her service plan, *see* TEX. FAM. CODE ANN. 161.001(1)(O), we need not address her arguments as to the remaining findings supporting termination. *See In re J.F.C.*, 96 S.W.3d at 261 (requiring only one statutory ground under section 161.001 to meet the first-prong of a termination proceeding); *In re D.S.P.*, 210 S.W.3d at 779; *see also* TEX. R. APP. P. 47.1.

(1) desires of the child;

(2) emotional and physical needs of the child now and in the future;

(3) emotional and physical danger to the child now and in the future;

(4) parental abilities of individuals seeking custody;

(5) programs available to assist individuals to promote the best interest of the child;

(6) plans for the child by these individuals or by the agency seeking custody;

(7) stability of the home or proposed placement;

(8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9) any excuse for the acts or omissions of the parent.

544 S.W.2d 367, 372 (Tex. 1976); *see W.B. v. Tex. Dep't. of Protective and Regulatory Serv.*, 82 S.W.3d 739, 742 (Tex. App.—Corpus Christi 2002, no pet.).

There are a number of considerations which support the jury's firm belief or conviction that termination was in the children's best interest. While the children are too young to express their placement desire, testimony was elicited from Foster Mother who indicated that the children are doing very well in her and her husband's care and that they have made "leaps and bounds" from where they were at the initial placement. Foster Mother also indicated that both children experience speech delay, but are currently improving due to the speech therapy they have received. Foster Mother also explained that the children experienced behavioral issues after visiting with Mother and Father, including breaking and destroying things. She also recalled that during a scheduled visitation, Child One did not run to either Mother or Father. Foster Mother

9

also indicated that she engaged the assistance of Arrow Ministries to help with the foster-to-adoption process, which included a parenting class.

This evidence supports a reasonable factfinder's firm belief or conviction that the foster family's parental abilities, programs utilized by the foster family to assist the children, and stability of the foster family's home over Mother's home are in the children's best interest. Additionally, Mother's admitted cocaine use and failure to comply with the court-ordered service plan is probative of the issue of the children's best interest as well. *See In re C.H.*, 89 S.W.3d at 28. At trial, Mother's excuse for her failure to comply was because she has a drug problem and was unable to get treatment. The record shows that Mother was given ample opportunity to address her drug issues through court-ordered services, but she did not comply with the plan or its main goal of maintaining a drug-free life. After reviewing the record in the light most favorable to the finding, we conclude that factually and legally sufficient evidence supports the jury's firm belief or conviction that terminating Mother's parental rights to Child One and Child Two were in the children's best interest.

Mother's sole issue is overruled.

## B. Father's Sufficiency Challenge

In Father's sole issue on appeal, he contends that the evidence is factually and legally insufficient to support the jury's finding of termination. Like Mother, Father argues that DFPS failed to establish by clear and convincing evidence any of the statutory acts or omissions to support termination of father's parental rights and that termination was in Child Two's best interest.

10

Father contends that he was unable to comply with the court-ordered service plan—despite his desire to cooperate—because DFPS handled his case poorly and in an unprofessional manner which frustrated compliance. While DFPS caseworker Bridge conceded that Father's file was not handled in a model way—e.g., the file was in disarray and certain opportunities were denied to Father and Mother due to the mishandling of the file—evidence of Father's cocaine use was also presented. Like Mother's service plan, Father's plan provided that he: (1) submit to drug assessment and random drug screenings at DFPS's discretion; and (2) attend individual substance abuse therapy paid for by DFPS. The record reveals that on five occasions, Father was non-compliant with the drug screening requirement.[8] Like Mother, Father completed a parenting class, but only sporadically participated in individual and family counseling classes, and started, but did not complete, individual counseling services in Edinburg, Texas. Again, the number one priority of the service plan was to ensure that Father was drug free.

Based on the foregoing evidence and our review of the record and after giving appropriate deference to the jury's factfindings, we conclude that the evidence is legally and factually sufficient to support a reasonable trier of fact's firm belief or conviction that Father failed to comply with his court-ordered service plan. *See In re H.R.M.*, 209 S.W.3d at 108; *In re J.F.B.*, 180 S.W.3d at 573; TEX. FAM. CODE ANN. § 161.001(1)(O).[9]

---

[8] According to Bridge, Father tested positive for cocaine on August 27, 2010, September 16, 2010, and March 21, 2011. On two other occasions—January 13, 2011 and March 16, 2011—Father did not comply with the request. He tested negative on June 30, 2010, September 19, 2010, September 22, 2010, and December 10, 2010.

[9] Because we conclude that sufficient evidence supports the jury's finding that Father failed to

Father also argues that the evidence is insufficient to support the jury's finding that termination of his parental rights was in Child Two's best interest. In support of his argument, Father asserts that despite his struggles with narcotics, DFPS's decision to initiate termination proceedings were premature because he was seeking drug treatment to comply with the service plan, and he was employed in order to support the household without public assistance. When we consider the *Holley* factors, as well as others, with regard to Father, our conclusion is the same as for Mother. The record does not support Father's argument that the foster family's economic means over his was a determinative factor of the children's best interests. Father's drug use and failure to comply with his service plan is just as probative in the statutory acts or omissions prong of termination proceeding as well as the finding of what is in the children's best interest. *See In re C.H.*, 89 S.W.3d at 28. Here, Father failed to comply more than once with DFPS's top priority of the service plan. In addition, testimony was elicited which indicated social, cognitive, and behavioral improvement from the children since being removed from appellants' possession. After reviewing the record in the light most favorable to the finding, we conclude that the evidence is factually and legally sufficient to support the jury's firm belief or conviction that terminating Father's parental rights to Child Two was in the child's best interest.

Father's sole issue is overruled.

---

comply with his service plan, *see* TEX. FAM. CODE ANN. 161.001(1)(O), we need not address his arguments as to the remaining findings of acts or omission supporting termination. *See In re J.F.C.*, 96 S.W.3d at 261 (requiring only one statutory ground under section 161.001 to meet the first-prong of a termination proceeding); *In re D.S.P.*, 210 S.W.3d at 779; *see also* TEX. R. APP. P. 47.1.

## IV.    CONCLUSION

We affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
21st day of June, 2012.